**IN THE COURT OF APPEALS OF IOWA**

No. 24-0561
Filed July 3, 2024

**IN THE INTEREST OF J.K.,**
**Minor Child,**

**T.T., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Jones County, Joan M. Black, Judge.


　　A mother appeals the termination of her parental rights.  **AFFIRMED.**


　　Robert W. Davison, Cedar Rapids, for appellant mother.

　　Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

　　Robin L. Himes, Cedar Rapids, attorney and guardian ad litem for minor child.


　　Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother entangled in a "dangerous and unpredictable" relationship with the father of her child appeals the termination of her parental rights under Iowa Code section 232.116(1)(g) and (h) (2023).[1]  She claims the State failed to prove those grounds for termination and argues termination is not in the child's best interests because of their bond.  We affirm upon our de novo review of the record.

**I.      Background Facts and Proceedings**

When the child at the center of this case was born in 2022, the mother was already involved with the Iowa Department of Health and Human Services.  Her two older children were removed from her custody the year before because of domestic violence between her and those children's father.  The domestic violence continued in the mother's relationship with the father of this child, leading the State to file a child-in-need-of-assistance petition in May.  The child was adjudicated in June but allowed to remain in the mother's custody.  The mother's relationship with the father continued into July, although she told the department that she knew he was "using something" and she was scared of him.  The father had a history of using methamphetamine, while the mother had used ecstasy and marijuana in the past.

The State applied for temporary removal in late August, citing the parents' history of domestic violence and substance use, as well as the mother's decision to place the child with her sister because she felt overwhelmed.  The juvenile court denied the application in its dispositional order, determining those issues were not

---

[1] The father's parental rights were also terminated.  He does not appeal.

pervasive because the father was in jail and the mother's sister was not an inappropriate placement.

By late October, the mother had progressed to overnight visits with her other two children. And the parents were consistently participating in couples' therapy. Less than one week later, however, the State again applied for temporary removal based on the mother leaving the child in the father's care in violation of the safety plan, ongoing concerns for domestic violence in the child's presence, and the parents' inconsistent participation in drug testing. This time, the juvenile court granted the application. The parents later stipulated to continued removal. The child has not returned to parental custody since then.

In late December, the child's guardian ad litem moved to establish a limited guardianship because the parents were neglecting the child's medical needs. That motion was granted. Incidents of domestic violence resulting in police intervention continued. After one incident in late January 2023, the father obtained a no-trespassing order prohibiting the mother from being on his property.

Because of the hostility between the parents, their couples' therapy ended and their visits with the child were made separate. But, by March, it appeared the parents were back together. In May, the parents confirmed they had resumed their relationship and were again living together. Law enforcement was called to the home the parents shared several times over the next few months. On one occasion in mid-June, the mother got into a physical altercation with the father's ex-girlfriend. The father wouldn't let the mother leave and began kicking her car. Other incidents throughout August involved the father's threats to harm himself and a stand-off with police. The mother told service providers that she and the

father had again ended their relationship, but their actions showed otherwise. Although the mother had progressed to semi-supervised visits, they reverted to fully supervised after she allowed the father to attend her visits. And while the parents had resumed couples' therapy, they stopped attending in August. From there, the father largely stopped participating in all services but visitation.

During this chaotic time, the mother's parental rights to her other two children were terminated under Iowa Code section 232.116(1)(f) and (h). In its July ruling, the juvenile court detailed the services the mother participated in and some of her progress but found termination was appropriate due to her unwillingness to end her volatile relationship with the father. The court noted the mother "has repeatedly stated that if she had to, she would choose her children" over her relationship with the father but "[i]n reality, [she] has consistently chosen [him] over her children." We affirmed that ruling on appeal. *See generally In re L.S.*, No. 23-1123, 2023 WL 8448714 (Iowa Ct. App. Dec. 6, 2023).

In September, the department recommended proceeding with termination, given both parents' participation in services since 2021 with no progress on the father's anger issues, domestic violence, and the mother's continued relationship with the father. In its permanency order, the juvenile court directed the State to file a termination petition, and the State did so in October.

The termination hearing was held in January 2024. The department caseworker testified the main concerns were the continued violence between the parents, their inability to address that issue, and their dishonesty about their relationship. The caseworker explained that each time the mother progressed to a lower level of supervision over her visits, there was another fight between the

parents. While the caseworker agreed the child was bonded to the mother, she testified that termination would not harm the child: "That bond is there but it has diminished over time that I do not believe it's strong enough to cause undue trauma." The mother testified she was no longer in a relationship with the father, insisting "[i]t's over for good" and had been since August, when she "realized he was never going to grow up and be the man he should be."

In its termination ruling, the juvenile court detailed the on-again, off-again domestically violent rollercoaster that is the parents' relationship. While the court acknowledged the mother made progress in some areas, it determined she was not "willing or able to keep [the child] safe when it comes to" the father, who had not consistently participated in drug testing or managed "his mental health and his emotional volatility." The court implicitly found the mother's claim that she ended things with the father not credible, explaining the mother "can say what she believes the court wants to hear but has not demonstrated that she has actually made changes in her life that would enable the court to entrust her with the safety of a child." As a result, the court found the evidence was sufficient to support termination under section 232.116(1)(g) and (h) and termination was in the child's best interests, with no applicable exceptions. The mother appeals.

## II.    Analysis

We review terminations of parental rights de novo, applying a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). While not

binding, we give weight to the juvenile court's findings of fact, especially when it comes to witness credibility. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).

On the first step, the mother purports to challenge the sufficiency of evidence supporting both grounds for termination, section 232.116(1)(g) and (h). "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). While the mother's petition on appeal provides separate argument sections for each ground, the substance of each section only challenges termination under section 232.116(1)(h). Absent a substantive challenge to termination under section 232.116(1)(g), we could deem the issue waived and affirm on that ground. *See, e.g., In re E.S.*, No. 23-0544, 2023 WL 3335326, at *1 (Iowa Ct. App. May 10, 2023). However, we elect to address the merits of the ground the mother does challenge.

On section 232.116(1)(h), the mother only challenges the final element, that the child could not be safely returned to parental custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that child cannot be returned to parental custody "at the present time"); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The mother argues—without elaboration—that "[t]here are minimal safety concerns regarding the child in the mother's care" and "[t]he child could be safely returned to her care."

But the mother ignores her "lengthy relationship [with the father] that was marred by domestic violence." *In re Z.B.-D.*, No. 08-1221, 2008 WL 4877943, at *2 (Iowa Ct. App. Nov. 13, 2008). While the mother testified that she had ended

things with the father, the juvenile court didn't buy it, and neither do we. History shows the mother always "reunited with him," *id.* at *3, and was continually dishonest about their relationship status. Even if we believed that the relationship had recently ended, this "untested period of separation did not warrant a return" of custody. *Id.* Although the mother made progress in other areas, her domestically violent relationship with the father was enough to prevent returning the child to her custody. *Id.* (finding the children couldn't be returned to the mother's custody where the "primary if not sole impediment to reunification was" her domestically violent relationship); *see also In re E.B.*, No. 22-1799, 2023 WL 386700, at *4 (Iowa Ct. App. Jan. 25, 2023) ("The parent[s'] unaddressed and unresolved domestic abuse . . . presents a danger to the children if they were returned to parental custody.").

In a conflated claim on the second and third steps, the mother argues "termination is not in the child's best interests," *see* Iowa Code § 232.116(2), "because of the bond between the child and [his] mother," *see id.* § 232.116(3)(c). Because the mother does not address how the best-interests factors in section 232.116(2) weigh against termination, we limit our analysis to the bond exception in section 232.116(3)(c). *See In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023) ("Consideration of the parent-child bond is not a part of our best-interests analysis."); *see also In re L.L.*, No. 24-0431, 2024 WL 2045335, at *3 (Iowa Ct. App. May 8, 2024) (noting best-interests claim based on bond exception "is more properly addressed under the third step"). The exception authorizes the court to forgo termination when it "would

be detrimental to the child . . . due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

The evidence shows, as the juvenile court and all parties agreed, that the child is bonded to the mother. But a bond alone is not enough to avoid termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) ("[T]he existence of a bond is not enough."). The mother presented no evidence that the child would suffer physically, mentally, or emotionally upon termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception."). And the department caseworker testified the bond was not strong enough to cause undue trauma to the child. Given the child's young age and extended length of removal, we agree. We therefore conclude this exception does not apply.

## III.    Conclusion

We affirm the termination of the mother's parental rights.[2]

**AFFIRMED.**

---

[2] To the extent the mother passively requests "a few more months" to work toward reunification, she does not present us with any "specific factors, conditions, or expected behavioral changes which [would] comprise the basis for the determination that the need for removal . . . will no longer exist at the end of" an extension of time. *See* Iowa Code § 232.104(2)(b).